



Caution
As of: Jan 04, 2012

**ROSANN M. WILKS, et al., Plaintiffs, v. THE PEP BOYS, Defendant.**

**Case No. 3:02-0837**

**UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE, NASHVILLE DIVISION**

*2006 U.S. Dist. LEXIS 69537*; *11 Wage & Hour Cas. 2d (BNA) 1554*

**September 26, 2006, Decided**

**SUBSEQUENT HISTORY:** Affirmed by *Wilks v. Pep Boys, 2008 U.S. App. LEXIS 10722 (6th Cir.) (6th Cir. Tenn., 2008)*

**PRIOR HISTORY:** *Wilks v. Pep Boys, 2006 U.S. Dist. LEXIS 69539 (M.D. Tenn., Sept. 26, 2006)*

**COUNSEL:** [*1] For Rosann M. Wilks, Rafe White, Taylor Lee Conger, Sean Carroll, Brian Taylor, Wilma Monroe, William A. Dorsey, Gary D. Killoran, Ernest Jr. Tubbs, Patrick J. Reeners, Lisa K. Hess, Donald Palermo, Diego Rodriguez, Michael Murphy, Carol Fulginiti, Roland Wyman, Charles H. Godfrey, Steven A. Robyn, Andrea Harmon, Juan C. Cruz, Matthew T. Dipietro, Plaintiffs: Charles P. Yezbak, III, Nashville, TN. Eric C. Hallstrom, Heidi R. Burakiewicz, Laura A. Brown, Fern L. Holland, Gregory K. McGillivary, Molly A. Elkin, Woodley & McGillivary, Washington, DC.

For Robert Reinhold, Victor Pena, C. Hugh Coates, Michael Delio, Frank Durant, Richard Martinez, Plaintiffs:Charles P. Yezbak, III, Nashville, TN.Eric C. Hallstrom, Heidi R. Burakiewicz, Laura A. Brown, Gregory K. McGillivary,Molly A. Elkin, Woodley & McGillivary, Washington, DC.

For Pep Boys, The, Defendant: Corrie L. Fischel, Joyce E. Taber, Kathy B. Houlihan, Morgan, Lewis & Bockius, Washington, DC. Mark C. Travis, Wimberly, Lawson, Seale, Wright & Daves, PLLC, Cookeville, TN. Megan E. Shafer, Michael L. Banks, Morgan, Lewis & Bockius, Philadelphia, PA. Michael W. Jones, Wimberly, Lawson, Seal, Wright & Daves, PLLC, Nashville, [*2] TN.

**JUDGES:** ALETA A. TRAUGER, United States District Judge.

**OPINION BY:** ALETA A. TRAUGER

**OPINION**

**MEMORANDUM**

Pending before the court is the Defendant Pep Boys' Motion Challenging Collective Treatment of Plaintiffs' Claims (Docket No. 324), to which the plaintiffs have responded (Docket No. 362), and the defendant has replied (Docket No. 374). For the reasons discussed

Page 2

2006 U.S. Dist. LEXIS 69537, *2; 11 Wage & Hour Cas. 2d (BNA) 1554

herein, the defendants' motion will be denied.

Also pending is the Defendant Pep Boys' Motion for Partial Summary Judgment (Docket No. 303), in response to which the plaintiffs have filed Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Partial Summary Judgment and in Support of Plaintiffs' Cross Motion for Summary Judgment (Docket No. 339). The defendant has replied in support of its motion and in opposition to the plaintiffs' cross-motion (Docket No. 361), and the plaintiffs have replied in support of their cross-motion (Docket No. 390). For the reasons discussed herein, the defendants' motion will be denied and the plaintiffs' cross-motion will be granted in part and denied in part.

**FACTUAL BACKGROUND and PROCEDURAL HISTORY**

The plaintiffs in this case are current and former employees [*3] of the defendant, The Pep Boys, which sells automotive parts and accessories and performs automotive services and repairs in 593 stores in 36 states and Puerto Rico. [1] Some of them are paid by the hour, while others are compensated pursuant to the defendant's complex, flat-rate payment system. The plaintiffs filed a putative collective action on August 28, 2002 on behalf of themselves and all others "similarly situated." (*See* Docket No. 1.) They asserted claims for unpaid overtime wages under the Fair Labor Standards Act ("FLSA"). (*See id.*) They amended their Complaint on September 13, 2002 to add twelve more named plaintiffs. (*See* Docket No. 4.)

> 1  Unless otherwise noted, the facts have been drawn from Plaintiff's Response to Pep Boys' Statement of Undisputed Material Facts (Docket No. 341) and from Defendant's Response to Plaintiffs' Supplemental Statement of Undisputed Material Facts (Docket No. 355).

The plaintiffs assert that the defendant subjected them to four allegedly unlawful nationwide [*4] policies: (1) depriving employees of overtime compensation by requiring them to work off the clock; (2) depriving employees of overtime compensation by shaving from payroll records hours that they worked; (3) failing to pay overtime compensation to flat-rate employees; and (4) failing to include compensation for promotional contests or "spiffs" in the employees' regular rate of pay, thereby depriving them of the overtime value of such compensation. [2] (*See* Docket No. 4 P 10.)

> 2  This last allegation is immaterial to the claims presented here. The court, in a January 6, 2004 Order, granted the defendant's motion for leave to pay the overtime premium value of spiff and contest prizes to certain plaintiffs and found that any related payments made to individuals who were represented by plaintiffs' counsel had to be made through such counsel, "but only as agreed to by the parties." (*See* Docket No. 142.)

The defendant amended its Answer on December 21, 2004 to assert that the flat-rate plaintiffs [*5] were exempt from the FLSA under Section 7(I) of that statute. *See 29 U.S.C. § 207(i) (2000)*; (Docket No. 243). On September 23, 2005, it moved to amend it again to clarify and expand on its statutory and equitable defenses. (*See* Docket No. 287.) That motion is fully briefed and pending before the court. [3] (*See* Docket No. 287; Docket No. 311.)

> 3  As indicated in its contemporaneously issued Memorandum, the court grants the defendant's Motion to Amend.

At the outset of this case, the plaintiffs moved for conditional certification of a FLSA collective action and for expedited, court-supervised notice. (*See* Docket No. 10.) This court found that plaintiffs had "some factual support" for the assertion that they were "similarly situated" to potential class members and that, as such, notice should issue. (*See* Docket No. 83 at 1.) Notice issued to approximately 90,000 current and former hourly and flat-rate Pep Boys employees. The putative class now stands at approximately 356 [*6] members (*See* Docket No. 327 at 5.)

Three motions are at issue in this case. In the first, the defendant seeks a court order stating that the plaintiffs "are not similarly situated as that term is interpreted under the Fair Labor Standards Act ("FLSA"), *29 U.S.C. § 216(b)*, and may not, therefore, proceed collectively to bring their claims to trial." (*See* Docket No. 324 at 1.) In the second, the defendant moves for partial summary judgment with respect to the claims of ten flat-rate plaintiffs who, the defendant asserts, were exempt from the overtime requirements of the FLSA. (*See* Docket No. 303 at 1.) Finally, in the third, the plaintiffs have filed a cross-motion for summary judgement with respect to this same issue. (*See* Docket No. 339 at 7.) In this motion, the

Page 3

2006 U.S. Dist. LEXIS 69537, *6; 11 Wage & Hour Cas. 2d (BNA) 1554

plaintiffs seek the court's determination that the defendant has not established that it was exempt from the FLSA with respect to the ten flat-rate plaintiffs at issue here and that, as such, its method of compensating the plaintiffs violates that statute's provisions. (*See id.*)

**ANALYSIS**

**I. Because the court finds that the plaintiffs are sufficiently similarly** [*7] **situated to render collective treatment of their claims appropriate, the defendant's Motion Challenging Collective Treatment of Plaintiffs' Claims will be denied.**

Under the FLSA, all covered employees must be paid one and one-half times their regular rate of pay for hours worked in excess of forty per week. *29 U.S.C. § 207(a)(1)*; *Comer v. Wal-Mart Stores, Inc., 454 F.3d 544, 2006 WL 1999135, at *1 (6th Cir. 2006)*. An employer that violates this provision can be held liable for unpaid overtime compensation plus an equal amount as liquidated damages. *29 U.S.C. § 216(b) (2000)*.

Employees may bring suit under the FLSA on their own behalf and on behalf of all those who are "similarly situated." *See id. Section 216* establishes two requirements for a representative action: (1) the plaintiffs must actually be "similarly situated"; and (2) all plaintiffs must signal in writing their affirmative consent to participate in the action. *See § 216(b)*; *Comer, 454 F.3d 544, 2006 WL 1999135, at *1*. Similarly situated plaintiffs are permitted to "opt into" the suit, as distinguished from the "opt-out" approach employed in class [*8] actions under *Fed. R. Civ. P. 23*. *See Comer, 454 F.3d 544, 2006 WL 1999135, at *1*.

*Section 216* does not define "similarly situated." *See Landsberg v. Acton Enters., Inc., 2006 U.S. Dist. LEXIS 23439, No. 2:05-CV-0500, 2006 WL 745178, at *1 (S.D. Ohio Mar. 22, 2006)*. Courts seeking to fill this gap have utilized a variety of approaches. The Sixth Circuit employs a bifurcated analysis under which a plaintiff must demonstrate that the members of a class are similarly situated at two different stages of the case: the "notice stage" and the "decertification stage." *See Comer, 454 F.3d 544, 2006 WL 1999135, at *2*; *White v. MPW Industrial Servs., Inc., 236 F.R.D. 363, No. 1:05-CV162, 2006 WL 752554, at *3 (E.D. Tenn. 2006)*; *Olivo v. GMAC Mortg. Corp., 374 F. Supp. 2d 545, 548 (E.D. Mich. 2004)*; *Clark v. Dollar General Corp., 2001 U.S. Dist. LEXIS 25976, 2001 WL 878887, at *3, *6 (M.D. Tenn. 2001)*. The initial analysis occurs at the "notice stage," usually early on in the case, when the court determines whether notice of the action should be given to putative class members. *See White, 236 F.R.D. 363, 2006 WL 752554, at *3*. The analysis must be [*9] undertaken again, if and when the defendant moves for decertification after discovery is complete. *See id.* The plaintiff's burden at the decertification stage is significantly higher than at the notice stage. *See id.*

In determining whether the parties are similarly situated at the decertification stage, courts consider a variety of factors. *See 236 F.R.D. 363, [WL] at *4* (listing the various factors courts have considered). Among these factors are: (1) the disparate factual and employment settings of the individual plaintiffs, such as a) job duties; b) geographic location; c) supervision; and d) salary; (2) the various defenses available to the defendant that appear to be individual to each plaintiff; and (3) fairness and procedural considerations. *See Moss v. Crawford & Co., 201 F.R.D. 398, 409 (W.D. Pa. 2000)*. Notably, even at the decertification stage, *similarly* situated does not mean *identically* situated. *See id.*

Some courts employ a separate balancing test after considering these factors, *see Olivo, 374 F. Supp. 2d. at 548*, while others fit the balancing test under the rubric of the "fairness and procedural considerations" factor, [*10] *see Moss, 201 F.R.D at 410*. In conducting the balancing test, courts consider whether certification would serve the purposes of a collective action under the FLSA, *e.g.,* whether it would (1) lower the cost of the action to individual plaintiffs; and (2) increase judicial utility by providing for efficient resolution of many claims in one proceeding. *See Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 170, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)*. Courts then balance those interests against factors such as (1) "any prejudice to the defendant"; and (2) "any judicial inefficiencies that may result from allowing plaintiffs to proceed collectively." *See Olivo, 374 F. Supp. 2d. at 548*.

Here, the plaintiffs assert that their claims are suitable for treatment as a collective action because "they are similar in nature and they all stem from [the d]efendant's enforcement of nationwide policies . . . ." (*See* Docket No. 362 at 1.) The defendant refutes the existence of any impermissible policy and notes that the plaintiffs' claims "rest on disparate factual situations in a minority of Pep Boys' stores nationwide, and Pep Boys

Page 4

2006 U.S. Dist. LEXIS 69537, *10; 11 Wage & Hour Cas. 2d (BNA) 1554

has established numerous individualized [*11] defenses to the individual claims." (*See* Docket No. 327 at 2.) After conducting a painstaking review of the hundreds, if not thousands, of pages of admissible evidence submitted in this case, 4 the court finds that the plaintiffs have adequately demonstrated that they are similarly situated such that collective treatment of their claims is appropriate.

> 4    A Memorandum and an Order on the Defendant's Motion to Strike Exhibits Attached to Dkt # 362 (Docket No. 371) will be contemporaneously issued. The court declines to rule on the Plaintiffs' Motion for Leave to Supplement the Record in Opposition to Defendant's Motion Challenging Collective Treatment of Plaintiffs' Claims (Docket No. 419) because it finds that any decision thereon is rendered moot by this opinion.

**A. Because the plaintiffs have presented significant evidence that they were subjected to a common, improper practice, the variations in their factual and employment settings do not render collective treatment inappropriate.**

One of the [*12] factors material to many courts' analysis of the plaintiffs' factual and employment settings is whether they were all impacted by a "single decision, policy, or plan." *See Moss, 201 F.R.D at 409-10* (citing *Thiessen v. GE Capital Corp., 996 F. Supp. 1071, 1082 (D. Kan. 1998))*. The existence of this commonality may assuage concerns about plaintiffs' otherwise varied circumstances. *See Hill v. Muscogee County Sch. Dist., 2005 U.S. Dist. LEXIS 35725, No. 4:03-CV-60, 2005 WL 3526669, at \*3-\*4 (M.D. Ga. Dec. 20, 2005)* (finding that the plaintiffs "had met their burden of showing that they [were] similarly situated with regard to employment setting and job duties by presenting substantial allegations of a pattern of potential FLSA violations); *Moss, 201 F.R.D at 410* (finding that the plaintiffs' claim that they were subjected to a common, impermissible practice trumped the disparity in their employment situations).

   *1. The plaintiffs have raised allegations about the defendant's purportedly nationwide, improper time-keeping and overtime practices that are substantial enough to demonstrate that they are bound by a common nexus.*

[*13]  While the court's research did not reveal--and the parties do not cite--any controlling precedent as to the specific evidentiary standard by which the plaintiffs must demonstrate the existence of an alleged policy or practice to which they all were subjected, some courts have found that the plaintiffs' burden with respect to this factor is a relatively stringent one. *See Hill, 2005 U.S. Dist. LEXIS 35725, 2005 WL 3526669, at \*2* (stating that the plaintiffs "must demonstrate a reasonable basis for their claim of a class-wide violation") (internal quotation omitted); *Moss, 201 F.R.D. at 409* (noting that the plaintiffs are required to produce "substantial evidence" of a common policy).

In seeking to establish that they were the victims of a common, impermissible practice, the plaintiffs here contend that each individual was "denied overtime as a result of Pep Boys' uniform corporate policies" and that they are, therefore, "similarly situated under *Section 16(b) of the FLSA* so that a collective action is appropriate." (*See* Docket No. 362 at 3.) In response, the defendant argues that its time-keeping and overtime policies are lawful (*see* Docket No. 327 at 7) and that the [*14] plaintiffs have not demonstrated that they were subjected to any common, impermissible policy or practice in contravention of these lawful policies (*see id.* at 8).

The defendant has submitted a number of filings that support its assertion that it maintained a lawful, nationwide policy under which it paid its employees for all hours worked. (*See, e.g.,* Docket No. 304-7, Operations Employment Guide (emphasizing that "[m]isrepresentation (overstating or understating) of [an employee's] compensable work time is a serious policy violation which may result in the loss of [the employee's] employment"); Docket No. 329-3, Decl. of Gwenevere Candler, at 2, 5 (noting that she, as Director of Human Resources (Southwest Division) for the defendant, was aware of mandatory, nationwide training programs for employees that address "Pep Boys' policy prohibiting employees from working off-the-clock" and that she personally conducted audits of stores in her territory in order to ensure that they were abiding by the defendant's time and attendance policies); Docket No. 329-8, Decl. of Sonia Hill, at 1-3 (asserting that she, as Employee Relations Manager for the defendant, rarely received [*15] complaints from employees about time shaving and that, when she did receive meritorious reports about improper payment practices, she resolved them and

Page 5

2006 U.S. Dist. LEXIS 69537, *15; 11 Wage & Hour Cas. 2d (BNA) 1554

ensured that the complaining employees received appropriate back pay); Docket No. 329-26, Decl. of Richard Koch, at 13, 33 (providing evidence that he, as Director of Human Resources (Western Division) for the defendant, explicitly condemned the practice of allowing employees to work off the clock and upheld the termination of an employee who was fired for "admitted falsification of time and attendance records").)

But the plaintiffs, too, have submitted evidence that bolsters their contention that the defendant subjected them to improper time-keeping and overtime practices. (*See, e.g.,* Docket No. 51, Supplemental Decl. of Michael Cronin, at 2 (noting that his manager, to whom he refers by name, instructed him to shave hours from the payroll records of hourly employees and demonstrated how to do so); Docket No. 363-24, Decl. of Richard Martinez, at 4 (asserting that his managers, to whom he refers by name, informed him "that overtime was not to be reflected on payroll records regardless of the circumstances" and stating that he [*16] was terminated when he refused to comply with their orders to shave employees' time); Docket No. 332-2, Pl. Benny Buys Resp. to Def.'s First Set of Interrogs., at 12 (indicating that he complained approximately "five times a month" about not getting paid for overtime work and noting that, while his managers, whom he lists by name, told him that they would remedy the problem, they never did); Docket No. 340-5, Dep. of Kevin Cynova, at 42, 67 (indicating that his manager, whose name he provides, specifically requested him to clock out but continue working and explicitly stated that Cynova would be fired if he refused to work off the clock, and asserting that he never complained about his manager's requirements because "I needed my job, so I did what I was told.").) The defendant, despite its many submissions, has not provided conclusive evidence that these statements by the plaintiffs lack veracity.

In addition to this sampling, the plaintiffs have proffered testimony that establishes recurring themes involving (1) managers who, upon finding themselves short on allotted labor hours but with work still to be done, requested that their hourly employees work off the clock or shaved time [*17] from their employees' pay records before turning them in at the end of the week; and (2) managers who, in requiring their flat-rate employees to meet what appear to be stringent productivity requirements, suggested that they work off the clock. (S*ee, e.g.,* Docket No. 331-4, Dep. of Terrance Burget, at 65, 79-81 (referring to his manager by name, indicating that his manager told him that, "[i]f you checked out while you were still here, that wouldn't bother me," and noting his belief that his manager routinely struggled to run the store with the insufficient number of labor hours allotted to him); Docket No. 331-13, Dep. of Colleen Mowrey, at 101 (noting that, as a manager, she shaved employees' time to indicate that they had only worked 40 hours in any given week); Docket No. 363-46, Dep. David Zoller, at 35 (noting that his manager, whom he names, encouraged him, as a flat-rate employee, to work off the clock to keep his productivity rate up)).)

The submissions by the defendant demonstrate that (1) it had a written policy prohibiting the very practices about which the plaintiffs now complain; and (2) many of the defendant's human resources employees attempted to enforce this [*18] policy and to police violations. The plaintiffs do not contest the existence of this written policy. Rather, they argue that "[t]he mere promulgation of a rule against working off the clock is not enough." (*See* Docket No. 362 at 24 (quoting *Clark v. Dollar General Corp., 2001 U.S. Dist. LEXIS 25976, No. 3:00-0729, 2001 WL 878887, at \*4 (M.D. Tenn. 2001)*.)

Given the plaintiffs' proffer of significant evidence supporting their contention that the defendant, despite its written policies, subjected them to impermissible time-keeping and overtime practices, the court finds that the plaintiffs have demonstrated their subjection to a common, impermissible practice in a manner that suffices to meet their burden at this decertification stage of the proceedings. *See White, 236 F.R.D. 363, 2006 WL 752554, at \*4* (noting that, at the decertification stage, a plaintiff "must meet a stricter standard of proving that the putative plaintiffs are 'similarly situated'"); *see also Hill, 2005 U.S. Dist. LEXIS 35725, 2005 WL 3526669, at \*2-\*3* ("[I]f the decision makers all employ the same practice to deny overtime compensation, one justifiable inference which arises is that the pattern of violations was not coincidental [*19] but resulted from the application of a central policy."); *Moss, 201 F.R.D. at 409*.

***2. Differences among the plaintiffs in terms of their job descriptions, pay rates, geographic locations and other factors do not render collective treatment inappropriate.***

The defendant has devoted significant attention to pointing out differences among the plaintiffs in terms of their "stores . . . departments . . . managers; regions and

Page 6

2006 U.S. Dist. LEXIS 69537, *19; 11 Wage & Hour Cas. 2d (BNA) 1554

districts." (*See, e.g.,* Docket No. 327 at 29-32 (arguing that the plaintiffs' factual differences render their case inappropriate for collective treatment); Docket No. 328-6 (listing the plaintiffs' differing factual and employment settings); Docket No. 328-14 (depicting plaintiffs' various job titles).) Regardless of these acknowledged differences, however, each of the plaintiffs asserts a common claim, *i.e.,* that the defendant failed to compensate him or her for hours worked and, as such, violated the FLSA. (*See* Docket No. 362 at 1.)

Notably, the defendant's own submissions indicate that its stores' time-keeping and overtime practices were dictated at the national level, rather than in each different locality. (*See* [*20] Docket No. 330-6, Oral Dep. of Philip McAllister, at 146-147 (describing how the defendant computes allotted labor hours for its stores based on each store's projected sales and noting that it "authorize[s] a certain number of hours that [the stores] can fill with employee work"); Docket No. 329-4, Decl. of William Colvard, at 2-3 (describing the defendant's nationwide time-keeping and pay practices); Docket No. 327 at 24 (listing factors used by the defendant to forecast allotted labor hours).) As such, these practices applied to each of the plaintiffs, regardless of the specifics of his or her particular job.

The plaintiffs have made a strong case for their argument that this system dictates that managers must commit the FLSA violations alleged by the plaintiffs in order to keep their jobs, or at least that they are strongly motivated to do so. The demonstration of an allegedly improper practice that existed throughout the defendant's stores distinguishes this case from many of the otherwise factually similar cases cited by the defendant. In those cases, the courts found that the plaintiffs had failed to demonstrate that the defendant had an impermissible, nationwide policy [*21] or practice. *See, e.g., Basco v. Wal-Mart Stores, Inc., 2004 U.S. Dist. LEXIS 12441, No. Civ. A. 00-3184, 2004 WL 1497709 (E.D. La. July 2, 2004)* (denying conditional certification of a class of plaintiffs alleging an improper policy where the plaintiffs had submitted only a small number of employee declarations, all of which had been specifically countered by the defendant); *Tracy v. Dean Witter Reynolds, Inc., 185 F.R.D. 303, 309 (D. Colo. 1998)* (declining to find the existence of an impermissible, national policy where the plaintiffs had presented statements from ten employees, all of whom testified to only their personal experiences and admitted that they had no knowledge as to whether their experiences were part of a national policy or practice, and where a manager, who had submitted a declaration saying that the defendant did have an improper national policy, had later reversed course, noting that "as far as [she] knew, [the defendant] did not have a national policy of not paying overtime").

Accordingly, the court finds that, on balance, the differences among the plaintiffs do not outweigh the similarities in the practices to which they claim to have been subjected. *See Hill, 2005 U.S. Dist. LEXIS 35725, 2005 WL 3526669, at *2-*4* [*22] (refusing to decertify a class of plaintiffs despite the defendant's contention that they had "different job duties, different hours worked, different allegations about the manner in which they were denied pay, and different supervisors," where a fact-finder could conclude that the defendant subjected the plaintiffs to a common practice, *i.e.,* it told all of them to work no more than forty hours per week but then assigned more work than could reasonably be completed in that time and trusted that, as conscientious employees, they would get the work done, even if completing their duties meant working overtime); *Moss, 201 F.R.D at 410* (finding that, irrespective of the differences in the plaintiffs' "job duties, geographic assignments and hourly billing rates," collective treatment was appropriate where each plaintiff asserted a common claim, *i.e.,* that he or she was wrongfully deprived of earned overtime pay).

In addition, the court notes that factually disparate plaintiffs are often divided into subclasses for the purposes of judicial efficiency at trial. *See, e.g., In re Delta Air Lines, 310 F.3d 953, 956 (6th Cir. 2002)* [*23] (describing the district court's division of the plaintiffs into various subclasses in a class-action case); *Thiebes v. Wal-Mart Stores, Inc., 1999 U.S. Dist. LEXIS 18649, No. 98-802-KI, 1999 WL 1081357, at *3 (D. Or. Dec. 1, 1999)* (noting that the court could "divide the class into subgroups" in a FLSA action); *Takacs v. Hahn Auto. Corp., 1999 U.S. Dist. LEXIS 22146, No. C-3-95-404, 1999 WL 33127976, at *1-*3 (S.D. Ohio Jan. 25, 1999)* (finding that, where plaintiff-employees in a FLSA case could be divided into several job categories, they could attempt to prove their damages by presenting testimony from representatives of each of the categories). The court is willing, in this case, to consider the division of the plaintiffs into representative subclasses for the purposes of trial.

**B. Collective treatment will not leave the defendant**

Page 7

2006 U.S. Dist. LEXIS 69537, *23; 11 Wage & Hour Cas. 2d (BNA) 1554

**unable to employ its various defenses.**

The defendant contends that collective treatment of the plaintiffs' claims will cripple its efforts to defend itself against their allegations. (*See* Docket No. 327 at 35-41.) It maintains that it has established particularized defenses to each plaintiff's off-the-clock and time-shaving claims, such that it must confront [*24] them all individually. (*See id.*) The plaintiffs counter that most of the defendant's so-called individualized defenses are actually uniform and suitable for assertion against each plaintiff who testifies at trial. (*See* Docket No. 362 at 36.) Additionally, they note that, should it so desire, the defendant is free to call plaintiffs who are not part of the representative class to testify at trial. (*See id.*)

After considering the defenses that will likely be appropriate in this case, the court finds that each of them could be raised in a collective forum, where the defendant will be free to present evidence of its lawful employment policies and practices, to cross-examine individual representative plaintiffs, and to call to the stand others with material testimony that helps the defendant's case. Additionally, the court will consider bifurcation of the case into a liability stage, where the parties could address the alleged existence of an impermissible policy or practice, and a damages one, where they could, if necessary, debate the impact of that policy or practice on individual plaintiffs. *See Thiessen v. Gen. Elec. Corp., 267 F.3d 1095, 1106 (10th Cir. 2001)* [*25] (reversing a district court's decision to decertify in a collective action where bifurcation of the case into a liability phase and a damages one was possible). Accordingly, because a collective action will allow the defendant adequate opportunity to defend itself against the plaintiffs' allegations, its purported need to confront each plaintiff individually does not defeat the propriety of collective treatment.

**C. Fairness and procedural considerations weigh in favor of collective treatment.**

As noted above, *see supra* p. 5, in determining whether fairness and procedural considerations militate toward collective treatment of the plaintiffs' action, the court must determine whether such treatment would comport with the purposes of the FLSA, *e.g.,* with Congress's aim to make the statute "broadly remedial and humanitarian." *See Donovan v. Brandel, 736 F.2d 1114, 1116 (6th Cir. 1984)*. To that end, the court must balance the benefits of a reduction in the cost to individual plaintiffs and any increased judicial utility that may result from the resolution of many claims in one proceeding with the cost of any potential detriment to the defendant and the [*26] potential for judicial inefficiency that could stem from collective treatment. *See Hoffman-La Roche, Inc., 493 U.S. at 170*; *Vaszlavik, 175 F.R.D. 672 at 678.*

Because the plaintiffs' assertions about the defendant's purportedly improper time-keeping and pay practices play a predominant role in each of their claims, any requirement that each plaintiff prove his or her claims individually would waste more judicial time and resources than trying their cases individually would preserve. Although the defendant contends that decertification is necessary to protect its due process rights, *see* Docket No. 327 at 42-45, these rights must be balanced with the rights of the plaintiffs, many of whom likely would be unable to bear the costs of an individual trial, to have their day in court. *See Glass v. IDS Fin. Servs., Inc., 778 F. Supp.1029, 1081-82 (D. Minn. 1991)* (finding that, although the defendant complained that collective treatment would infringe upon its due process rights, such treatment was necessary in order to protect the rights of the plaintiffs, who were "less able to bear the cost of separate trials because they ha[d] fewer resources than [the defendant]").

[*27] Congress, in seeking to allow plaintiffs to vindicate their rights under the FLSA, provided them with the opportunity to do so collectively when appropriate. *See 29 U.S.C. § 216(b)*; *Dunlop v. Carriage Carpet Co., 548 F.2d 139, 143-44 (6th Cir. 1977)*. The Sixth Circuit has specifically noted that the FLSA "must not be interpreted or applied in a narrow, grudging manner." *See Dunlop, 548 F.2d at 144*. As such, the court's decision to allow the plaintiffs to proceed collectively is in line with Congress's determination that defendants will not always have the opportunity to pursue individual defenses against FLSA plaintiffs but, instead, must collectively defend a suit that is so pursued. *See 29 U.S.C. § 216(b).*

**II. Because the court finds that the defendant is bound by the FLSA with respect to its compensation of the ten flat-rate plaintiffs, the Defendant's Motion for Partial Summary Judgment will be denied and the Plaintiffs' Cross-Motion for Partial Summary Judgment will be granted in part and denied in part.**

As indicated above, the defendant has moved for

Page 8

2006 U.S. Dist. LEXIS 69537, *27; 11 Wage & Hour Cas. 2d (BNA) 1554

summary judgment on the claims [*28] of ten flat-rate plaintiffs. [5] (*See* Docket No. 303.) In support of its motion, it claims that these employees are exempt from the FLSA provisions that mandate overtime pay in certain instances and that, as such, they are not entitled to seek back pay. *See 29 U.S.C. § 207(i)*; (Docket No. 304 at 1-2). While the defendant focuses on only ten of the approximately 150 flat-rate plaintiffs in this case, it claims that a finding that even one plaintiff was subject to the FLSA exception would indicate that its flat-rate payment system is not *per se* illegal. (*See id.* at 2 n.1.)

> 5 The ten flat-rate plaintiffs at issue here are Juan Cardenas, Frank Clyne, Ronald Cole, Kevin Cynova, Donald Gillett, Horacio Muro, Charles Sparks, Nhut Tran, Phong Tran, and David Zoller.

The plaintiffs both oppose the defendant's motion and request that the court enter summary judgment in their favor. (*See* Docket No. 339 at 1.) Specifically, they seek a determination that the exception does not apply [*29] to the plaintiffs at issue here and that, as such, the defendant's method of compensating them is illegal under the FLSA. (*See id.* at 2.) They note that the defendant did not assert its entitlement to the FLSA exception until "late in this litigation," more than two years after it filed its initial Answer. (*See id.; see also* Docket No. 30, Def.'s Answer (Oct. 28, 2002); Docket No. 233, Mem. of P. & A. in Supp. of Def.'s Mot. for Leave to Am. its Answer (Nov. 22, 2004); Docket No. 235, Am. Answer (Nov. 23, 2004).)

*Federal Rule of Civil Procedure 56(c)* provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*; [*30] *Logan v. Denny's, Inc., 259 F.3d 558, 566 (6th Cir. 2001)*.

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)*; *McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000)*. "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC, 219 F.3d 547, 551 (6th Cir. 2000)* (quoting *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*).

If the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which she has the burden, however, the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co., 187 F.3d 533, 537-38 (6th Cir. 1999)*. To preclude summary judgment, the nonmoving party "must go beyond the pleadings and come forward with specific [*31] facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc., 285 F.3d 415, 424 (6th Cir. 2002)*. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Shah v. Racetrac Petroleum Co., 338 F.3d 557, 566 (6th Cir. 2003)* (quoting *Anderson, 477 U.S. at 252*). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson, 477 U.S. at 249-52*. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White, 190 F.3d 427, 430 (6th Cir. 1999)* (citing *Anderson, 477 U.S. at 247-49*). With this standard in mind, the court turns to the particulars of the parties' FLSA motions for summary judgment.

Under the FLSA, employers must pay workers one and one-half times their [*32] ordinary rate for any hours they work beyond a forty-hour work week. *See 29 U.S.C. § 207(a) (2000)*. This requirement, however, is subject to a number of exceptions.

Exceptions to FLSA coverage are to be narrowly construed against employers in order to further Congress's goal of providing broad federal employment protection. *See Fazekas v. Cleveland Clinic Found. Healthcare Ventures, Inc., 204 F.3d 673, 675 (6th Cir. 2000)*; *Cowan v. Treetop Enters., Inc., 120 F. Supp. 2d*

Page 9

2006 U.S. Dist. LEXIS 69537, *32; 11 Wage & Hour Cas. 2d (BNA) 1554

*672, 687 (M.D. Tenn. 1999)* (citing *Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 297 n.13, 105 S. Ct. 1953, 85 L. Ed. 2d 278 (1985)*). In order to claim an exemption, an employer has the burden of proving, "by a preponderance of the clear and affirmative evidence," that each employee meets each of the exception's requirements. *See Acs v. Detroit Edison Co., 444 F.3d 763, 767 (6th Cir. 2006)*; *Renfro v. Ind. Mich. Power Co., 370 F.3d 512, 515 (6th Cir. 2004)*; *Cowan, 120 F. Supp. 2d at 687* (citing *Hodgson v. The Klages Coal & Ice. Co., 435 F.2d 377, 382 (6th Cir. 1970), cert denied, 402 U.S. 973, 91 S. Ct. 1660, 29 L. Ed. 2d 137*). [*33]

Here, the defendant claims that the ten plaintiffs listed in its Motion for Partial Summary Judgment fall under the "retail commission" exception of the FLSA. *See 29 U.S.C. § 207(i)*. This exception provides as follows:

> No employer shall be deemed to have violated subsection (a) of this section by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title [describing the minimum wage], and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a *bona fide* commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

*29 U.S.C. § 207(i)*.

In other words, in order to claim this exception, the defendant must [*34] demonstrate the following three elements: (1) the stores in which the ten plaintiffs work qualify as "retail or service establishments"; (2) the defendant pays the ten plaintiffs a regular rate of more than $ 7.73, or one and one-half times the federal minimum wage, for each hour they work; and (3) the ten plaintiffs receive more than half of their compensation (for a representative period of not less than one month) in the form of commissions earned from the sale of goods or services. *See 29 U.S.C. § 207(i)*; *29 C.F.R. § 779.412 (2000)*. The plaintiffs contest only the last two prongs of this test. (*See* Docket No. 339 at 20 (arguing that "Pep Boys' Flat Rate Pay Plan is not, as a matter of law, a [c]ommission under Section 7(i)); Docket No. 341 P 35 (refuting the defendant's contention that the plaintiffs earned one and one-half times the minimum wage for each hour they worked); Docket No. 361 at 2-3 (noting that "plaintiffs concede that the Pep Boys stores in which plaintiffs worked are retail or service establishments").) Because the court finds that the defendant has failed to meet its burden as to the third [*35] prong, *i.e.*, that it has not demonstrated that the plaintiffs receive more than half of their compensation in the form of commissions, it need not address the second prong.

**A. In order for a payment system to qualify as "commission" for the purposes of Section 7(i), an employer must compensate its employees at a rate that is proportionally related to the amount it charges its customers.**

The defendant and the plaintiffs disagree as to the proper definition of "commission" under the FLSA. The defendant argues that an employer's method of compensating its employees qualifies as commission if it "provides an incentive for employers to increase their wages by increasing their employers' revenues or decreasing its costs." (*See* Docket No. 361 at 11.) In other words, it argues, an employee earns a commission when he works under a payment system that incentivizes him to "'hustle' to finish [his] job in order to obtain a larger number of jobs for greater compensation." (*See id.* at 12 (quoting *Klinedinst v. Swift Invs., Inc., 260 F.3d 1251, 1254-55 (11th Cir. 2001)*).) It maintains that its method of compensating the flat-rate plaintiffs qualifies as commission [*36] because it gives the plaintiffs an opportunity to "increase their compensation by increasing their productivity." (*See* Docket No. 304 at 19; Docket No. 361 at 11.)

To the plaintiffs, any compensation method that qualifies as a commission "must demonstrate some proportionality between the cost of service to the customer and the corresponding payment to the employee." (*See* Docket No. 390 at 2.) They claim that the defendant's compensation system cannot accurately

Page 10

2006 U.S. Dist. LEXIS 69537, *36; 11 Wage & Hour Cas. 2d (BNA) 1554

be termed "commission" because the wages paid to the flat-rate plaintiffs "fail to meet any rudimentary standard of comparability to the labor charges paid by customers." (*See* Docket No. 339 at 20; Docket No. 390 at 12.)

Both sides point to DOL publications and court decisions that, they claim, support their interpretation of the term "commission" under *Section 7(i)*. As discussed below, however, the parties have not cited--and the court's own research has not revealed--any controlling precedent as to the proper definition of "commission" in the FLSA context. Accordingly, these publications and decisions are valuable only to the extent that the court finds them to be persuasive. *See Fazekas, 204 F.3d at 677.*

[*37] *1. DOL publications require commissions to exhibit proportionality between the compensation paid to employees and the costs passed down to customers.*

The defendant asserts that DOL determinations lead to the conclusion that an "absolute proportional relationship" between the labor hours credited to an employee and the rate charged to a customer need not exist in order for the compensation scheme to qualify as "commission-based." (*See* Docket No. 361 at 13.) It argues that the DOL Field Operations Handbook supports this notion. (*See id.* (citing Dep't of Labor Field Operations Handbook § 21h04(d) (July 12, 1990) (noting that, where an employee "is given a certain proportion of the charge expressed in terms of so many dollars and cents per 'flat rate' hour rather than in terms of a percentage of the charge to the customer[,] [and t]he dealer does not change the employee's share per flat rate if the charge to the customer is changed . . . [the Wage and Hour Administrator] will not deny that such payments represent 'commissions on goods or services' for the purposes of *Sec. 7(i)*").)

It also cites a 1988 Opinion Letter in which the DOL Wage and Hour Administrator [*38] found that a system met the requirements of the Section 7(i) exception when it compensated employees based on a "flag rate" multiplied by the number of standard "flag hours" allotted for the completion of a particular task. *See* Dep't of Labor Op. Ltr., 1988 DOLWH LEXIS 84 (May 24, 1988). Additionally, it points to a 2006 letter from a staff member in the Wage and Hour Division that cites Section 21h04(d) of the Field Operations Handbook and essentially reiterates the point made in the 1988 letter: some employees who are paid "according to the flag hours accumulated during the pay period multiplied by their flag rate per hour" earn a commission under *Section 7(i)*. *See* Dep't of Labor Op. Ltr., No. FLSA2006-15NA (June 29, 2006), *available at* http://www.dol.gov/esa/whd/opinion/FLSANA/2006/2006_06_29_15NA_FLSA.pdf; (Docket No. 424 at 1).

The plaintiffs, for their part, cite a number of DOL letters that they claim support their contention that the defendant's compensation system is not commission-based, but instead consists of flat fees that are unrelated to the value of the services the plaintiffs perform. (*See* Docket No. 339 at 25-29.) They point to a 1996 opinion [*39] letter signed by a member of the Wage and Hour Division's FLSA Enforcement Team, in which the DOL indicated that, "where an installer [of alarm systems] is paid a flat fee per installation, we would not consider such a payment to be a commission payment for the purposes of *section 7(i) of the FLSA*." *See* Dep't of Labor Op. Ltr., 1996 DOL WH LEXIS 7 (Apr. 3, 1996). They also note a 2005 opinion letter from the Deputy Administrator of the Wage and Hour Division that indicated that "flat fees paid without regard to the value of the service performed do not represent commissions on goods or services for the purposes of *Section 7(i)*." *See* Dep't of Labor Op. Ltr., 2005 DOL LEXIS 63 (Nov. 14, 2005) (finding that aerobics instructors who were paid a flat fee per lesson taught did not qualify for the Section 7(i) exemption).

Although "not all opinion letters of an administrative agency are worthy of deference by the courts," the Sixth Circuit has reiterated the Supreme Court's position that "an opinion of the Administrator of the Wage and Hour Division of the Department of Labor has persuasive value if the position of the Administrator is well-considered and well-reasoned." [*40] *See Fazekas, 204 F.3d at 677* (citing *Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S. Ct. 161, 89 L. Ed. 124 (1944))*. The *Skidmore* Court found that the weight given to administrative decisions should depend upon "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier pronouncements, and all those factors which give it power to persuade, if lacking power to control." *323 U.S. at 140*; *see also Air Brake Sys., Inc. v. Mineta, 357 F.3d 632, 643 (6th Cir. 2004)* (noting that "federal courts give respectful consideration to authoritative interpretations that lack the force of law, but that

Page 11

2006 U.S. Dist. LEXIS 69537, *40; 11 Wage & Hour Cas. 2d (BNA) 1554

nonetheless have the power to persuade") (internal quotation omitted).

Sixth Circuit jurisprudence indicates that an elevated level of deference should be given to Department of Labor ("DOL") opinion letters that interpret "the Secretary's own regulation." *See Acs, 444 F.3d at 769-70* (citing *Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414, 65 S. Ct. 1215, 89 L. Ed. 1700 (1945))*. In *Seminole Rock,* the Court indicated that, when choosing between various constructions of an ambiguous administrative [*41] regulation, "the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." *325 U.S. at 414*. Because each of the opinion letters at issue in this case involves the interpretation of the FLSA itself, rather than of FLSA-related administrative regulations, the increased deference described in Acs does not come into play here.

Upon review of the DOL documents listed above, the court finds that, to the extent they are persuasive, the DOL's definition of "commission" is more related to proportionality than the defendant represents. No DOL document states explicitly that proportionality is *not* required for a payment system to qualify as commission. Rather, even the DOL's Field Operation Handbook, upon which the defendant relies heavily, (*see, e.g.,* Docket No. 361 at 13), indicates that an employee whom the DOL considers to be earning a commission "is given a certain proportion of [the flat-rate hours] charged to a customer." Dep't of Labor Field Operations Handbook § 21h04(d). While the DOL notes that "Wage-Hour will not deny that [a] payment[] represent[s] [*42] 'commissions on goods and services'" where a dealer "does not change the employee's share per flat rate hour if the charge to the customer is changed," it seems that what would be termed a "commission-based" compensation system is keyed, at least initially, to the cost passed on to the customer. *See id.*

More recent DOL documents lend support to this finding. The 1996 letter cited by the plaintiffs indicates that, while alarm installers who were paid a flat fee per installation did not earn a commission, installers who were paid "a percentage of the sales price of the alarm systems they installed" did. *See* Dep't of Labor Op. Ltr., 1996 DOLWH LEXIS 7, at 1.

Similarly, the 2005 letter that the plaintiffs cite recognizes a distinction between compensation systems based on flat fees and those correlated to customer prices. It differentiates between the two payment plans in place at a number of health and athletic clubs--one that gave instructional employees a flat fee for each lesson that they conducted and another that paid them "a percentage of the club's revenue per lesson session"--and indicates that, "[b]ecause it appears that the employees of the clubs may [*43] be compensated in more than one way, we are unable to determine whether they qualify for the exemption." *See* Dep't of Labor Op. Ltr., 2005 DOLWH LEXIS 63, at 2-3.

Finally, the 2006 letter submitted by the defendant indicates the DOL's determination that an automotive dealership paid its flat-rate employees a commission under *Section 7(i)* when it gave them an amount that appeared to be related to the value of the service performed for the customer. *See* Dep't of Labor Op. Ltr., No. FLSA2006-15NA, at 2 ("Based on a review of the information provided, it is our opinion that payments under the plan represent 'commissions on goods or services' because the amount of the payment appears to be related to the value of the service performed."). Each of these documents seems to reflect a DOL requirement that, in order to be considered a commission under *Section 7(i)*, an employee's compensation must somehow be linked to the cost passed on to the customer.

While the court recognizes the deference that must be given to opinions of the Wage and Hour Administrator over those issued by lower-level DOL staff, none of the documents discussed above contradicts the 1988 indication from [*44] the Administrator that a "flag time"-based system could qualify as a commission under *Section 7(i)*. *See* Dep't of Labor Op. Ltr., 1988 DOLWH LEXIS 84, at 1; *see also Fazekas, 204 F.3d at 679* (noting that "the written opinions of the Administrator or his deputies constitute the most reliable interpretations of the Department's regulations"). Rather, these more recent letters address an issue that was simply not discussed in the 1988 letter, *i.e.,* whether *Section 7(i)* requires a proportional relationship between employee compensation and customer costs. *See* Dep't of Labor Op. Ltr., 1988 DOLWH LEXIS 84, at 1 (failing to indicate whether the flag-time system in question linked employee pay to customer charges); *see also Fazekas, 204 F.3d at 679* (indicating that courts should give more deference to recent opinion letters than to old ones).

***2. Relevant case law supports the notion of a***

Page 12

2006 U.S. Dist. LEXIS 69537, *44; 11 Wage & Hour Cas. 2d (BNA) 1554

*proportionality requirement for a commission-based system.*

Although this issue "finds little illumination from the sparse case law" on point, the precedent cited by both parties seems to reinforce--or at least not undermine--the need for proportionality [*45] in any commission-based system. *See Klinedinst, 260 F.3d at 1254*. As emphasized by the plaintiffs, the United States District Court for the Western District of Washington in 2003 explicitly found that a compensation system very similar to the one in this case did not qualify as a commission under *Section 7(i)* because "[the p]laintiff was paid the exact same hourly rate [per labor hour] regardless of the amount charged to the customer." *See Huntley v. Bonner's, Inc., 2003 U.S. Dist. LEXIS 26643, No. C02-1004L, 2003 WL 24133000, at *3 (W.D. Wash. Aug. 14, 2003)*. While the *Huntley* court recognized that "[i]t is beyond dispute that a 'flat-rate' compensation system can be a commission-based system," it found that such was not the case, absent some correlation between the amount paid to the employee and the amount charged to the customer for labor performed on his or her behalf. *See 2003 U.S. Dist. LEXIS 26643, [WL] at *2* (citing *Klinedinst, 260 F.3d at 1256*).

The cases cited by the defendant do not contradict the idea that proportionality is a prerequisite of commission. For instance, in *Mechmet v. Four Seasons Hotels, Ltd., 825 F.2d 1173, 1175-78 (7th Cir. 1987)*, [*46] the court found that each waiter employed in a hotel's banquet department earned a commission for the purposes of *Section 7(i)*. Each of these employees, however, earned his or her share of the "18 percent service charge [added] to every banquet charge." *See id. at 1175*. Thus, because proportionality already existed between employee pay and customer cost, the court in *Mechmet* did not need to address whether such correlation was necessary in order to label the pay system as "commission."

Additionally, *Klinedinst,* a case relied upon by the defendant, did not address the issue of proportionality, nor do the facts of that case indicate whether the compensation paid to the employee, an automobile painter, was linked to the amount the employer charged its customers. *See Klinedinst, 260 F.3d at 1253*; (Docket No. 361 at 22-23). Rather, that court simply determined that the employer's pay system was similar to the one described in the DOL's Field Operations Handbook and that this similarity meant that the system qualified as "commission" under *Section 7(i)*. *See Klinedinst, 260 F.3d at 1255* (finding the Field Operations Handbook [*47] to be persuasive authority); *see also Dong Yi v. Sterling Collision Ctrs., 2006 U.S. Dist. LEXIS 35900, No. 04-C-3138, 2006 WL 1444897, at *7 (N.D. Ill. May 17, 2006)* (finding that the compensation given to a class of automotive body shop technicians qualified as "commission" without discussing the need for proportionality or whether it existed).

The court recognizes that this case presents a close question whose answer carries significant consequences for both parties. It notes that the defendant has not cited one statute, rule, or administrative interpretation that bolsters its "incentive-to-hustle"-based theory of commission. [6] Rather, support for this notion stems only from judicially created overlay to the FLSA that is non-binding on this court. *See, e.g., Klinedinst, 260 F.3d at 1254-55*; *Dong Yi., 2006 U.S. Dist. LEXIS 35900, 2006 WL 1444897, at *7*.

> 6   The defendant points to *29 C.F.R. § 779.416(c) (2000)* as a basis for its theory of commission. (*See* Docket No. 361 at 11.) An examination of this regulation, however, reveals only that the DOL's Wage and Hour Division will not consider a commission rate to be "bona fide" if an employee who is eligible for that rate 1) typically earns only his guaranteed draw; or 2) is paid a regular wage that is expressed in terms of a percentage of sales that his employer can always be expected to make, "with only a slight addition to his wages based upon a greatly reduced percentage applied to the sales above the expected quota." *See 29 C.F.R. § 779.416(c)*. Neither of these two scenarios is analogous to the one in this case, nor does this regulation support the defendant's theory as to the meaning of "commission" under the FLSA.

[*48] As it must, the court turns instead to what little authority exists in the Sixth Circuit about how to interpret FLSA exceptions. That authority, as indicated above, *see supra* p. 18, explicitly instructs this court to interpret such exceptions narrowly and against the employer. *See Fazekas, 204 F.3d at 675*; *Cowan, 120 F. Supp. 2d at 687* (citing *Tony & Susan Alamo Found., 471 U.S. at 297 n.13*). Keeping this directive in mind and having evaluated the relevant administrative

Page 13

2006 U.S. Dist. LEXIS 69537, *48; 11 Wage & Hour Cas. 2d (BNA) 1554

interpretations and case precedent, the court rejects the defendant's definition of "commission" and finds that wages paid to flat-rate employees must be at least somewhat proportional to the charges passed on to customers.

**B. No reasonable jury could find that the defendant has demonstrated that its system of compensating the ten flat-rate plaintiffs qualifies as "commission" for the purposes of** *Section 7(i)*.

The parties disagree about whether the defendant's compensation system is proportionally related to the price paid by the defendant's customers, as is required in order for it to be considered "commission" under the FLSA. *See supra* [*49] Part II.A. As noted above, in order to meet its burden under the FLSA, an employer has the burden of proving, "by a preponderance of the clear and affirmative evidence," that each employee meets each of the exception's requirements. *See Acs, 444 F.3d at 767*; *Renfro, 370 F.3d at 515*. Thus, if the defendant is to show that the flat-rate plaintiffs fit within the FLSA exception at issue here, it must demonstrate, in a manner that meets this standard, the existence of the requisite proportional relationship.

The parties generally agree as to the mechanics of the defendant's method of compensating the flat-rate plaintiffs. The defendant adopted its flat-rate compensation system in 1993, after rejecting a system in which employees received a direct percentage of the labor costs charged to customers. Under the current method, flat-rate employees are credited with a certain number of "labor hours" for each service job they perform. These "labor hours" are not calculated based on how long an employee actually took to do the job, but rather are computed according to predetermined standards as to how long each job should take to complete. At the end of [*50] each week, the employee's labor hours are multiplied by his flat rate, which varies by plaintiff between $ 14.00 and $ 23.70, in order to determine the employee's flat-rate wages for that week.

The defendant also uses a complex scheme under which it pays employees a Variable Benefit Rate (VBR), which is calculated by multiplying a varying percentage of the employees' flat rate by the number of hours they actually clocked (as opposed to their "labor hours"), when the VBR total exceeds their flat-rate total for that week, *e.g.,* in periods of low productivity. (*See id.* P 26(c).) This varying percentage is calculated based on each particular employee's productivity over the preceding twelve weeks. (*See* Docket No. 339 at 9; Docket No. 341 P 24.) The plaintiffs explain that, under these two methods, the employees receive either their flat-rate wages or their VBR-related wages, whichever is greater. (*See* Docket No. 339 at 9.) The defendant describes this dichotomy differently. It maintains that the employees always receive their flat-rate pay and that, for pay periods when the VBR-based wages exceed the flat-rate ones, it "pays the difference in the form [*51] of Mechanic's Supplemental Pay . . . in addition to the commission." (*See* Docket No. 341 PP 26(a), 26(c).)

The price that is charged to a Pep Boys customer for a particular service or repair is arguably based on the number of labor hours allocated to that task, although the parties vehemently disagree as to the extent of the correlation between the price the customer pays and the number of labor hours for which the employee who performed the task is compensated. (*See* Docket No. 341 P 21.) Neither party, however, claims that the charges passed on to the customer relate to the number of hours that an employee actually took to complete a particular task, as opposed to the number of labor hours assigned to that task. (*See, e.g.,* Docket No. 304 at 19 (*"In no way was the commission system based on actual hours worked."*) (emphasis in original).)

The defendant argues that, "in cases in which labor hour credit was reduced, the customer charge was reduced proportionately." (Docket No. 361 at 17.) It expands on this argument in its Statement of Undisputed Material Facts, where it asserts that a correlation exists between the labor costs charged to a [*52] customer for a particular service or repair and the labor hours credited to the employee who completed the task. (*See* Docket No. 304-24 P 21; *see also* Docket No. 304 at 4 ("The labor hour is both the hourly increment of time Pep Boys charges the customer for the labor associated with a task and the time 'booked' by the flat rate employee for performing the task.").) The defendant does not assert the existence of a proportional relationship between labor-hour credit and overall customer price. Rather, it maintains that "the portion of the total bill to the customer" is not relevant to the plaintiffs' arguments. (*See* Docket No. 400 at 8 (emphasis in original).)

The plaintiffs vigorously refute the existence of any correlation between the labor hours credited to flat-rate employees and either the labor charges or the overall

Page 14

2006 U.S. Dist. LEXIS 69537, *52; 11 Wage & Hour Cas. 2d (BNA) 1554

price passed on to a customer. In support of their refutation, they offer numerous declarations of flat-rate plaintiffs, who describe alleged inconsistencies between their pay and customer price, as well as a number of summaries that purport to demonstrate the same disparities. (*See* Docket No. 339.) The defendant has moved to [*53] strike a number of these exhibits, as it did with the exhibits attached to Plaintiffs' Response to Defendant's Motion Challenging Collective Treatment of Plaintiffs' Claims. (*See* Docket No. 359; Docket No. 371.) While the court, in the context of its ruling on Defendant's Motion to Strike Exhibits Attached to Docket # 362, has already denied the defendant's Motion to Strike with respect to some of the exhibits at issue here, it need not further address the defendant's motion as to the remaining contested exhibits.

Rather, uncontested evidence exists that undermines any notion of a proportional relationship between employee compensation and customer price, either overall or for labor alone. [7] Both parties acknowledge that the amount paid to flat-rate employees for each labor hour worked varies by plaintiff between $ 14.00 and $ 23.70. (*See* Docket No. 341 P 19.) Yet the defendant has presented no evidence that customers are charged more for labor when the work done on their behalf is performed by an employee at the high end of this scale than they are charged when it is done by someone at the low end. Instead, it emphasizes that "the labor hours and customer [*54] labor charges did not fluctuate on a case by case basis nor did the *rate* charged to the customer vary by service." (*See* Docket No. 361 at 17 (emphasis in original).) Additionally, as indicated above, the defendant has put forth neither argument nor evidence in support of the notion that employee compensation correlates with overall customer price.

> 7  No clear consensus exists as to whether a compensation system must be proportionally related to the labor charges passed on to a customer or to the overall price she must pay for the service or repair. *Compare* Dep't of Labor Field Operations Handbook § 21h04(d) (indicating that an employee whom the DOL considers to be earning a commission "is given a certain proportion of [the flat-rate hours] charged to a customer") *and Huntley, 2003 U.S. Dist. LEXIS 26643, 2003 WL 24133000, at *3* (finding that proportionality exists when employee pay correlates with the labor charges asked of a customer) *with* Dep't of Labor Op. Ltr., 1996 DOL WH LEXIS 7, at 1 (noting that, if installers were paid a percentage of the overall cost of the alarm systems they installed, they would be earning a commission for the purposes of the FLSA). While the weight of the authority favors a finding that the proper analysis involves a correlation between labor-hour credit given to employees and labor costs passed on to customers, the court need not arrive at a definitive conclusion on this point because the defendant has not shown a correlation of any sort. (*See* Docket No. 304-24 P 21; Docket No. 304 at 4; Docket No. 390 at 4 (arguing that a correlation must exist "between the price for services paid by Pep Boys' customers and the labor credit awarded to the employee for providing that service").)

[*55] Thus, the defendant has not met its burden of demonstrating proportionality between the plaintiffs' flat-rate wages and the charges passed on to customers, either for labor alone or for the overall task. If flat-rate compensation and labor costs were actually correlated, as the defendant claims they are, the labor costs would fluctuate based on the amount paid to the flat-rate employee tasked with completing the job. They do not. As such, it appears that the plaintiffs merely earn a predetermined amount for each task they complete and that this amount does not fluctuate in tandem with the amount charged to the customers. *See* Dep't of Labor Op. Ltr., 2005 DOL LEXIS 63 (finding that "flat fees paid without regard to the value of the service performed do not represent commissions on goods or services for the purposes of *Section 7(i)*").

An examination of the legislative purposes and public policy behind the FLSA supports a finding that the plaintiffs do not fall within the Section 7(i) FLSA exception. One purpose behind the FLSA's overtime provisions is to prevent workers who were "willing" to work abnormally long hours from taking jobs from employees who prefer to work [*56] shorter hours. *See Klinedinst, 260 F.3d at 1258-59* (Restani, J., dissenting in part); *Mechmet, 825 F.2d at 1175-76*. Another purpose is to spread work among employees, and thereby reduce unemployment, by requiring an employer to pay a penalty for using fewer employers to do the same amount of work as could be accomplished by more employees working less time. *See Klinedinst, 260 F.3d at 1258*; *Mechmet, 825 F.2d at 1176*. A third purpose behind the

Page 15

2006 U.S. Dist. LEXIS 69537, *56; 11 Wage & Hour Cas. 2d (BNA) 1554

provisions is to protect workers from long hours that might impair their health or lead to an increased number of accidents. *See Klinedinst, 260 F.3d at 1258*; *Mechmet, 825 F.2d at 1176*.

One of the plaintiffs in this case asserts that he worked as many as forty uncompensated overtime hours per week, (*see* Docket No. 331-5, Dep. of Benny Buys, at 120), while many others reportedly worked an average of at least five unpaid overtime hours each week (*see, e.g.,* Docket No. 340-3, Dep. of Juan Cardenas, at 39). Another plaintiff claims to have been injured while working overtime when a car fell from a hydraulic lift and he reflexively [*57] attempted to hold it up alone. (*See* Docket No. 363-17, Decl. of Donald Gillett, P 9); *see also Klinedinst, 260 F.3d at 1258* (recognizing that "automobile repair . . . can be hazardous"). In these examples, one sees the very issues anticipated by the FLSA at work in this case. The defendant has not adequately demonstrated to the court why such examples should be ignored in favor of a finding that the plaintiffs' type of employment should fall outside the protective reach of the FLSA.

The defendant has not met the stringent burden that is required of it in order to demonstrate that it may compensate its flat-rate employees free from the constraints of the FLSA. *See Acs, 444 F.3d at 767*; *Renfro, 370 F.3d at 515*. Accordingly, the court finds that the defendant is bound by the FLSA with respect to its compensation of the ten flat-rate plaintiffs at issue here.

**C. The plaintiffs are precluded from seeking summary judgment on the issue of whether the defendant's flat-rate compensation system violates the FLSA.**

In their Cross Motion for Summary Judgment, the plaintiffs seek both a determination that the defendant's [*58] flat-rate compensation system is subject to FLSA requirements and a finding that, as such, the system violates that statute's provisions. (*See* Docket No. 339 at 1-2.) In an Order issued on March 13, 2006, this court noted that, "[i]f the plaintiffs wish to file a cross-motion for summary judgment on any issue other than the issue presented in the defense motion (Docket No. 303) [*i.e.,* whether the ten flat-rate plaintiffs at issue here are exempt from the FLSA's overtime requirements], they shall file a motion for permission to file such a cross-motion for partial summary judgment that justifies the filing in terms of time, expense and judicial economy by March 27, 2006."

The plaintiffs never sought permission to move beyond the scope of the defendant's Motion for Partial Summary Judgment, nor do they attempt to counter the defendant's arguments to this effect. (*See* Docket No. 361 at 28.) Thus, the plaintiffs are precluded from arguing, at this stage of the proceedings, that the defendant's flat-rate compensation system violates the FLSA, even though the court has found herein that the system is subject to FLSA requirements. Such a debate must be saved for another [*59] day. Accordingly, the court denies this aspect of the plaintiffs' motion for summary judgment.

**CONCLUSION**

Because the court finds that the plaintiffs are sufficiently similarly situated to render collective treatment of their claims appropriate, the Defendant Pep Boys' Motion Challenging Collective Treatment of Plaintiffs' Claims will be denied. Additionally, because the defendant is bound by the FLSA with respect to its compensation of the ten flat-rate plaintiffs at issue in this case, the Defendant Pep Boys' Motion for Partial Summary Judgment will be denied and the Plaintiffs' Cross Motion for Summary Judgment will be granted in part and denied in part.

An appropriate order will enter.

ALETA A. TRAUGER

United States District Judge

**ORDER**

For the reasons expressed in the accompanying Memorandum, the Defendant Pep Boys' Motion Challenging Collective Treatment of Plaintiffs' Claims (Docket No. 324) is **DENIED.**

Additionally, the Defendant Pep Boys' Motion for Partial Summary Judgment (Docket No. 303) is **DENIED,** and the Plaintiffs' Cross Motion for Summary Judgment (Docket No. 339) is **GRANTED IN PART** and **DENIED** [*60] **IN PART.**

It is so ordered.

Enter this 26th day of September 2006.

ALETA A. TRAUGER

Page 16

2006 U.S. Dist. LEXIS 69537, *60; 11 Wage & Hour Cas. 2d (BNA) 1554

United States District Judge